IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.   Criminal No. 3:19cr146 (DJN)

CHRISTOPHER LESTER TATUM,
Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 75), moving pursuant to 18 U.S.C. § 3582(c)(1)(A) for Defendant's compassionate release in light of his medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19"). For the reasons set forth below, the Court will DENY Defendant's Motion (ECF No. 75).

### I.   BACKGROUND

#### A. Defendant's Underlying Offense

On May 31, 2019, Defendant brandished a semi-automatic handgun to effect a robbery of the convenience store, Fas Mart. (April 21, 2021 Presentence Investigation Report ("PSR") (ECF No. 69) ¶ 23). In the store, Defendant pointed a firearm at the clerk and demanded that she open the cash register. (PSR ¶ 23.) Defendant removed the money from the register and placed it in a bag. (PSR ¶ 23.) When the clerk failed to open the safe upon Defendant's request, he struck her in the head with the firearm and fled the location. (PSR ¶ 23.) Defendant admits in the Statement of Facts that he executed six additional armed robberies between April 7, 2019, and May 20, 2019. (Statement of Facts (ECF No. 47) ¶ 9.)

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                                              Criminal No. 3:19cr146 (DJN)

CHRISTOPHER LESTER TATUM,
     Defendant.

### MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 75), moving pursuant to 18 U.S.C. § 3582(c)(1)(A) for Defendant's compassionate release in light of his medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19"). For the reasons set forth below, the Court will DENY Defendant's Motion (ECF No. 75).

### I.  BACKGROUND

**A. Defendant's Underlying Offense**

On May 31, 2019, Defendant brandished a semi-automatic handgun to effect a robbery of the convenience store, Fas Mart. (April 21, 2021 Presentence Investigation Report ("PSR") (ECF No. 69) ¶ 23). In the store, Defendant pointed a firearm at the clerk and demanded that she open the cash register. (PSR ¶ 23.) Defendant removed the money from the register and placed it in a bag. (PSR ¶ 23.) When the clerk failed to open the safe upon Defendant's request, he struck her in the head with the firearm and fled the location. (PSR ¶ 23.) Defendant admits in the Statement of Facts that he executed six additional armed robberies between April 7, 2019, and May 20, 2019. (Statement of Facts (ECF No. 47) ¶ 9.)

### B. Procedural History

On December 17, 2019, a Grand Jury charged Defendant in a Second Superseding Indictment with eleven counts relating to multiple armed robberies. (ECF No. 27.) During a hearing on February 13, 2020, Defendant pled guilty to one count of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF Nos. 45-46.) On June 23, 2020, the Court sentenced Defendant to serve 360 months' imprisonment followed by 5 years' supervised release, in addition to the payment of two $100 special assessments and $10,000 in restitution. (ECF No. 63.)

### C. Defendant's Motion for Compassionate Release

On June 21, 2021, Defendant, represented by counsel, filed his Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act and Memorandum of Law in Support Thereof (("Def.'s Motion") (ECF No. 75)), arguing that "the global COVID-19 pandemic, combined with his current medical condition, present an 'extraordinary and compelling reason' for compassionate release." (Def.'s Mot. at 1-2.) On August 2, 2021, the Government filed its Response in Opposition to Defendant's Motion for Compassionate Release, (("Gov't Resp.") (ECF No. 93)), arguing that, among other reasons, Defendant has not suffered any negative consequences from his medical conditions and he does not face any particularized risk from his institution. (Gov't Resp. at 1-2.) On August 3, 2021, the Government filed its Supplement to Response in Opposition to Defendant's Motion for Compassionate Release, confirming that Defendant had received his second dose of the Pfizer COVID-19 vaccine. (("Gov't Supp. Resp.") (ECF No. 94)). Defendant did not file a reply, rendering this matter ripe for review.

## II. APPLICABLE LAW

The compassionate release statute begins with the default position that the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress has subjected this general rule to a few exceptions, including, as relevant here, where "extraordinary and compelling reasons warrant" a reduction of a defendant's sentence. *Id.* § 3582(c)(1)(A)(i). Originally, the law only permitted the Director of the Bureau of Prisons to move for compassionate release on behalf of prisoners. *Id.* § 3582(c)(1)(A) (2002). Subsequently, the First Step Act of 2018 broadened § 3582(c) to allow federal inmates to directly move a court for compassionate release after exhausting their administrative remedies. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

Under § 3582(c)(1)(A), the Court may not grant a defendant's motion unless the reduction proves (1) warranted by "extraordinary and compelling reasons," (2) "consistent with the 'applicable policy statements issued by the Sentencing Commission,'" and (3) consistent with "any applicable § 3553(a) factors." *United States v. Jenkins*, 2021 WL 6130105, at *5 (4th Cir. Dec. 29, 2021) (quoting *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021)). As to the first prong, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Smith*, 2021 WL 5579187, at *1 (4th Cir. Nov. 30, 2021) (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases)).

With regard to the second prong, the Fourth Circuit recently recognized "that [the] consistency requirement simply is not implicated [by defendant-filed motions], for the threshold reason that there currently exists no "applicable policy statement[ ]." *United States v. McCoy*,

3

981 F.3d 271, 281 (4th Cir. 2020). Resultantly, district courts "are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (cleaned up) (emphasis in original).

Ultimately, a defendant's demonstration of "extraordinary and compelling reasons" merely renders him "*eligible* for relief." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (emphasis in original). Under the third prong, the Court retains its discretion to deny the motion after balancing the § 3553(a) factors. *Id.* In this case, Defendant has not demonstrated an extraordinary and compelling reason to grant his compassionate release, and the § 3553(a) factors caution against relief.[1]

### III.  ANALYSIS

#### A. Defendant Does Not Demonstrate that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release.

Defendant has not demonstrated that extraordinary and compelling reasons entitle him to compassionate release. With the emergence of COVID-19 in the United States prison systems,[2] courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), 453 F. Supp.

---

[1]  As a threshold matter, the Court finds that this matter is ripe for review. On January 27, 2021, Defendant filed a Request for Administrative Remedy requesting compassionate release, and on February 19, 2021, the warden denied the Request. (Def.'s Mot. at 3.) Accordingly, this Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A). Indeed, the Government concedes that Defendant has exhausted his administrative remedies. (Gov't Resp. at 2.) The Court therefore has jurisdiction to consider the merits of Defendant's Motion.

[2]  *See* Fed. Bureau of Prisons, *COVID-19 Coronavirus*, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19).

4

...

3d 832, 841 (E.D. Va. 2020) (internal citations omitted). To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Center for Disease Control ("CDC") as a COVID-19 risk factor. *See, e.g., United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling (Feiling II)*, 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). A general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification.") (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (emphasis added)).

In support of his Motion requesting early release, Defendant argues that his medical conditions render him particularly susceptible to COVID-19. (Def.'s Mot. at 2.) Specifically, Defendant posits that, because he suffers from asthma and is borderline obese, he has an increased likelihood of developing serious complications and "suffer dire consequences" should he contract the virus. (Def.'s Mot. at 2.) Defendant additionally argues that his race renders him

5

particularly susceptible to COVID-19, as the CDC has identified "racial and ethnic minority groups" as groups that need extra precautions. (Def.'s Mot. at 11.)

Moreover, Defendant contends that he has a particularized risk of contracting the disease due to his incarceration at USP Canaan, as the "virus thrives in densely packed populations." (Def.'s Mot. at 2.) Defendant further claims that USP Canaan is ill-equipped to prevent the virus's spread to the inmates as social distancing and other recommended health and safety measures are "all but impossible within the confines of a crowded correctional institution." (Def.'s Mot. at 2.) Defendant informs that while no inmates at USP Canaan were infected with the Coronavirus at the time he submitted his Motion, there was one staff member who was. (Def.'s Mot. at 2.) Additionally, Defendant notes that 294 inmates and 75 staff members at USP Canaan have previously tested positive for COVID-19. (Def.'s Mot. at 2.)

In response to Defendant's Motion, the Government argues that Defendant has not established an extraordinary and compelling reason entitling him to compassionate release. (Gov't Resp. at 6.) Specifically, the Government contends that Defendant has established neither a particularized susceptibility to COVID-19 nor a heightened risk of contracting the disease at his prison facility. (Gov't Resp. at 6-7.) The Government concedes that Defendant has asthma and is borderline obese and that, according to the CDC, individuals with asthma and individuals who are obese or overweight are more likely to suffer severe illness from COVID-19. (Gov't Resp. at 9.) However, despite suffering from these medical conditions, the Government argues that Defendant does not face a particularized susceptibility to COVID-19, due to his status as fully vaccinated. (Gov't Resp. Supp. at 1.) The Government notes that the CDC has advised that vaccination protects individuals from contracting the virus and, should a breakthrough infection occur, prevents individuals from "getting seriously ill." (Gov't Resp. at 10.) The

Government also mentions that Defendant's medical records demonstrate that he has not suffered any negative consequences from his asthma and that he receives effective care from the prison. (Gov't Resp. at 1.) While the Government acknowledges that the pandemic has disproportionately impacted minority communities, it contends that Defendant's race does not create a particular susceptibility to the virus for Defendant's individual case. (Gov't Resp. at 12-14.) The Government argues that race, by itself, does not constitute a risk factor that would increase the chance of contracting the virus or exacerbate COVID-19 effects and points to data suggesting that the disparity in infection rates and adverse outcomes in minority communities, stems from "[l]ong-standing systemic health and social inequities," which may not be applicable in the prison setting. (Gov't Resp. at 13-14.)

The Government further contends that Defendant has not demonstrated that he faces any particularized risk of contracting COVID-19 at the prison, as at the time of his Motion, the prison had no active cases among prisoners and all prisoners who had previously contracted the virus at the prison have recovered. (Gov't Resp. at 14-15.) The Government asserts that the declining number of positive cases at the prison indicate the improvement of the conditions at the prison. (Gov't Resp. at 15.) Moreover, the Government argues that not only does Defendant's vaccine protect him from the risk of contracting COVID, but the increased vaccination of his fellow prisoners will also further minimize the risk of Defendant becoming infected. (Gov't Resp. at 15.) Finally, the Government states that Defendant's release plan to live in Richmond, Virginia, does not demonstrate that Defendant would be less likely to contract the virus outside of the facility, as the number of positive cases in Richmond, Virginia, continues to steadily increase. (Gov't Resp. at 15-16.)

Defendant has not established a particularized susceptibility to COVID-19. Although Defendant suffers from multiple medical conditions that the CDC identifies as COVID-19 risk factors (asthma and borderline obesity), Defendant received the COVID-19 vaccine, significantly reducing his risk of contracting COVID-19. *See The Possibility of COVID-19 after Vaccination: Breakthrough Infections*, Ctrs. for Disease Control & Prevention (last updated Sep. 7, 2021) ("COVID-19 vaccines are effective at preventing infection, serious illness, and death.").[3] Courts have concluded that, because vaccination mitigates the risk of contracting COVID-19 and, in the case of breakthrough infections, protects against serious illness, vaccination weighs against a request for compassionate release. *See, e.g., United States v. Jones*, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) (denying compassionate release, because the defendant had received one dose of the vaccine and "face[d] reduced risks from the virus"); *United States v. Hawthorne*, 2021 WL 1912382, at *2 (E.D. Va. May 12, 2021) (finding the defendant's variants argument against the vaccine to be speculative given that the vaccine has been shown to be effective).

Additionally, Defendant's race does not constitute a particular susceptibility to COVID-19. The Fourth Circuit has held that "'current evidence suggests a correlation, not causation' between race and vulnerability to and risk of complications from COVID-19," noting that "[w]hile the [CDC] recognizes that members of racial and ethnic minority groups face an increased risk of getting sick and facing complications from COVID-19, 'these disparities are not based on biological makeup but on other factors,'" such as systemic health and social inequities, *United States v. Colleton*, 2020 WL 7352577, at *2 (D.S.C. Dec. 15, 2020), *aff'd by United*

---

[3] Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited January 28, 2022).

*States v. Colleton*, 2022 WL 18500 (4th Cir. Jan. 3, 2022), and "variables in the community that might affect COVID-19 susceptibility and outcomes may not vary in prison." *United States v. Joiner*, 988 F.3d 993, 996 (7th Cir. 2021). Therefore, the Court finds that Defendant has not established a particularized susceptibility to COVID-19.

Even if Defendant had established a particularized susceptibility to COVID-19, Defendant has failed to demonstrate a particularized risk of contracting the disease at the prison facility. As of January 28, 2022, USP Canaan has 3 positive cases among its 1228 prisoners (or 0.24% positivity) and 11 cases among staff. *COVID-19 Cases*, Fed. Bureau of Prisons.[4] This case count lies far below the 2,552 cases (or 23.38% positivity) found in Richmond City, Virginia, where Defendant seeks release. *COVID Data Tracker, COVID19 Integrated County View*, Ctrs. for Disease Control & Prevention.[5]

Additionally, USP Canaan has modified its operations to combat the risks of COVID-19, including, among other preemptive measures, suspending all visitation, requiring use of face coverings, surgical or N95 masks facility-wide, restricting inmate movement and enhanced daily screening for staff entering the facility. *USP Canaan*, Fed. Bureau of Prisons (last visited Dec. 2, 2021).[6] USP Canaan also reports an impressive 1229 full inmate vaccinations, 214 full staff vaccinations and zero deaths to date among inmates and staff. *COVID-19 Cases*, Fed. Bureau of

---

[4] Available at https://www.bop.gov/coronavirus/ (last visited January 28, 2022) (under "COVID-19 Cases," click "Full breakdown and additional details").

[5] Available at https://covid.cdc.gov/covid-data-tracker/#county-view (last visited January 28, 2022).

[6] Available at https://www.bop.gov/locations/institutions/caa/ (last visited January 28, 2022).

9

Prisons.[7] As the facility has managed to contain and minimize the spread of COVID-19, the Court cannot conclude that Defendant has established a particularized risk of contracting the disease. *See High*, 997 F.3d at 185 ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison.").

The Court finds that Defendant has not established an extraordinary and compelling reason for his release, as Defendant has established neither a particularized susceptibility to COVID-19 nor a particular risk of contracting it in the prison.

### B. The § 3553(a) Factors Do Not Support Defendant's Release.

Even if Defendant had articulated an "extraordinary and compelling reason" for compassionate release, the § 3553(a) factors caution the Court against granting relief. Those factors include the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1)–(2).

In support of his Motion, Defendant argues that he will not present a danger to the community if released, because, despite his conviction for a crime of violence, he accepted responsibility for his conduct through his guilty plea. (Def.'s Mot. at 22.) In further support of this contention, Defendant asserts that he has not had any disciplinary infractions while

---

[7]     Available at https://www.bop.gov/coronavirus/ (last visited January 28, 2022) (under COVID-19 Vaccine Implementation," click "Learn more about vaccinations and view individual facility stats" (defining "fully inoculated" as "hav[ing] completed both doses" of Pfizer-BioNTech without reference to whether boosters are available)).

incarcerated at USP Canaan. (Def.'s Mot. at 22.) Defendant also notes that, while in custody, he has completed a drug education program, a psychology course and the requirements to obtain a G.E.D. (Def.'s Mot. at 3.) Defendant claims that he has changed because of this experience and has committed to being a law-abiding citizen, but regardless of this, points out that the potential for his reincarceration should he violate the terms of his five years' supervised release serves as adequate deterrence to him committing future criminal conduct. (Def.'s Mot. at 22.) Defendant further asserts that he has a viable release plan, which includes living with his wife and four stepchildren in Richmond, Virginia, and working in construction for his previous employer, Local 980. (Def.'s Mot. at 23.)

The Government argues that the relevant § 3553(a) factors and policy statements weigh against reducing Defendant's sentence. (Gov't Resp. at 17.) The Government asserts that Defendant remains a danger to the community, highlighting the serious nature of the underlying robbery offense and Defendant's criminal history. (Gov't Resp. at 17-19.) In support of its position, the Government notes Defendant's recidivism and his qualification as a career offender based on his prior robbery convictions. (Gov't Resp. at 20.) Additionally, the Government notes that Defendant has committed more than one offense involving firearms. (Gov't Resp. at 20.) The Government further contends that, because Defendant has only served approximately 6% of his 360-month sentence, granting his release would not provide adequate deterrence to Defendant's criminal conduct and would result in an unwarranted sentencing disparity compared with similarly situated defendants. (Gov't Resp. at 19.) Moreover, the Government argues that while Defendant has not committed any infractions at USP Canaan, he committed several while previously housed at Pamunkey Regional Jail for a prior conviction, indicating a lack of respect for the law. (Gov't Resp. at 21.) Further, the Government contends that Defendant's acceptance

incarcerated at USP Canaan. (Def.'s Mot. at 22.) Defendant also notes that, while in custody, he has completed a drug education program, a psychology course and the requirements to obtain a G.E.D. (Def.'s Mot. at 3.) Defendant claims that he has changed because of this experience and has committed to being a law-abiding citizen, but regardless of this, points out that the potential for his reincarceration should he violate the terms of his five years' supervised release serves as adequate deterrence to him committing future criminal conduct. (Def.'s Mot. at 22.) Defendant further asserts that he has a viable release plan, which includes living with his wife and four stepchildren in Richmond, Virginia, and working in construction for his previous employer, Local 980. (Def.'s Mot. at 23.)

The Government argues that the relevant § 3553(a) factors and policy statements weigh against reducing Defendant's sentence. (Gov't Resp. at 17.) The Government asserts that Defendant remains a danger to the community, highlighting the serious nature of the underlying robbery offense and Defendant's criminal history. (Gov't Resp. at 17-19.) In support of its position, the Government notes Defendant's recidivism and his qualification as a career offender based on his prior robbery convictions. (Gov't Resp. at 20.) Additionally, the Government notes that Defendant has committed more than one offense involving firearms. (Gov't Resp. at 20.) The Government further contends that, because Defendant has only served approximately 6% of his 360-month sentence, granting his release would not provide adequate deterrence to Defendant's criminal conduct and would result in an unwarranted sentencing disparity compared with similarly situated defendants. (Gov't Resp. at 19.) Moreover, the Government argues that while Defendant has not committed any infractions at USP Canaan, he committed several while previously housed at Pamunkey Regional Jail for a prior conviction, indicating a lack of respect for the law. (Gov't Resp. at 21.) Further, the Government contends that Defendant's acceptance

of responsibility by pleading guilty was negated when he filed a motion to vacate his sentence. (Gov't Resp. at 21.) Additionally, while the Government acknowledges that Defendant has completed some educational programs while incarcerated, the Government iterates that rehabilitation alone does not constitute sufficient reason for compassionate release. (Gov't Resp. at 21.) Finally, the Government contends that Defendant has not proposed a viable release plan. (Gov't Resp. at 22-24.) Specifically, the Government asserts that Defendant's plan to live with his wife in Richmond, Virginia, would not adequately protect against recidivism as he would be living in the same area in which he committed the underlying offenses. (Gov't Resp. at 23.) Additionally, the Government points to evidence of his wife's involvement, even if passively, in some of the robberies that Defendant committed. (Gov't Resp. at 23.)

The Court has considered all of Defendant's arguments but agrees with the Government and finds that the relevant § 3553(a) factors and policy statements do not support Defendant's compassionate release. Defendant committed the serious, violent offense of robbery. (PSR ¶ 13.) Defendant both pointed a gun at the cashier to effectuate the robbery and struck her with that gun. (PSR ¶ 23.) This robbery came in a string of armed robberies, with Defendant committing at least six other armed robberies in the previous year. (PSR ¶ 23.)

Worse, the instant offense followed two prior convictions for similar offenses and for which Defendant served over ten years' imprisonment combined. (PSR ¶¶ 96-97.) That Defendant committed this offense after serving a lengthy term of incarceration for similar offenses demonstrates a lack of respect for the law and an inability or unwillingness to learn from his past. Further, Defendant has served only a modicum of his 360-month sentence, and the Court finds that this punishment would not adequately deter Defendant from future criminal conduct. For these reasons, Defendant's risk of recidivism, and therefore his danger to the

public, remains high and weighs heavily against his early release. Defendant's plan for release does not adequately address these concerns. Further, serving less than ten percent of his sentence would create severe and unwarranted sentencing disparities between Defendant's sentence and the sentences of others who have committed similar offenses.

Finally, the Court has considered the rehabilitative efforts that Defendant has undertaken while incarcerated, including completing the requirements for his G.E.D., completing a drug education program and maintaining a clean disciplinary record. While the Court commends Defendant for the accomplishments that he has achieved while incarcerated, they do not outweigh the Court's findings as to the other factors. Indeed, as the Court has stated, Defendant's rehabilitation alone proves insufficient to warrant a sentence reduction.

Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that the nature and circumstances of Defendant's underlying offense and his criminal history weigh against Defendant's request. Releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and other from engaging in similar conduct, provide just punishment for the offense, avoid unwarranted sentence disparities or reflect the seriousness of Defendant's offense.

Accordingly, the Court denies Defendant's Motion for Compassionate Release.

## IV. CONCLUSION

For the reasons set forth above, the Court will DENY Defendant's Motions for Compassionate Release.[8] (ECF No. 75)

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 31, 2022

---

[8] Defendant's Motion superseded his previous Motion for Compassionate Release, filed *pro se*, which the Court will deny as moot. (ECF No. 67.)

14