IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.

Criminal No. 3:19cr146 (DJN)
Civil No. 3:21cv458 (DJN)

CHRISTOPHER LESTER TATUM,
Petitioner.

**MEMORANDUM OPINION**
**(Denying 28 U.S.C. § 2255 Motion)**

This matter comes before the Court on Christopher L. Tatum's Amended Motion under

28 U.S.C. § 2255 to vacate, set aside or correct his sentence. ("§ 2255 Motion" (ECF No. 100).)[1]

The Government filed a Response, (ECF No. 108), and Tatum Replied, (ECF No. 113). For the

reasons set forth below, Tatum's § 2255 Motion will be denied.

## I.     BACKGROUND

On December 17, 2019, a grand jury returned a Second Superseding Indictment charging

Tatum with five counts of Hobbs Act Robbery (Counts One, Three, Five, Seven and Nine); five

counts of brandishing a firearm during and in relation to a crime of violence (Counts Two, Four,

Six, Eight and Ten) and one count of possession of a firearm by a convicted felon in violation of

18 U.S.C. § 922(g)(1) (Count Eleven). (ECF No. 27, at 1.) In February 2020, Tatum pleaded

---

[1]     Tatum first moved for relief pursuant to 28 U.S.C. § 2255 on July 14, 2021. (ECF No. 86.) On February 1, 2022, the Court directed Tatum to file a signed petition complying with Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings. (ECF No. 97.) After the Court granted one extension, Tatum, through counsel, filed his current Amended Motion on March 9, 2022. (ECF No. 100.)

guilty to Counts Nine and Ten.[2]  (ECF No. 45.)  During a plea hearing on February 13, 2020, the

Court questioned Tatum regarding the charges against him and the factual basis of his plea, his

satisfaction with the services of his court-appointed attorney and his understanding of federal

sentencing procedures.  (Plea Transcript (ECF No. 106) at 8–9, 16–17, 23–24.)  After observing

Tatum and listening to his responses, the Court concluded that Tatum was competent to enter a

knowing and voluntary plea and accepted his plea as such.  (Plea Transcript at 29.)  The Court

set Tatum's sentencing for June 4, 2022.  (Plea Transcript at 30.)  However, due to the

Coronavirus-19 Pandemic, the Court later continued Tatum's sentencing to June 23, 2022.

In preparation for Tatum's sentencing, the United States Probation Office prepared a

Presentence Investigation Report ("PSR").  (PSR (ECF No. 53).)  During his interview with

Probation, Tatum "stated that he ha[d] no history of mental health issues," however, the PSR

noted that a recent mental health evaluation indicated that Tatum likely suffers from previously

undiagnosed and untreated bipolar disorder.  (PSR at 19.)  The PSR also summarized several jail

infractions that Tatum committed while detained between his plea hearing and sentencing,

including threatening correctional staff, refusing to lock down and passing feces to another

inmate so that inmate could throw it.  (PSR at 5.)

Before sentencing, the Court also received written sentencing positions from both the

Government and Tatum.  (ECF Nos. 52, 56.)  As relevant here, both the Government and

Tatum's counsel acknowledged Tatum's tentative bipolar diagnosis.  Specifically, Tatum's

---

[2]      Pursuant to a written plea agreement, the Government agreed to seek dismissal of the
nine outstanding charges.  (Plea Agreement (ECF No. 46) ¶ 11.)  Further, the parties agreed to a
non-binding recommended sentence of between 348 months (twenty-nine years) and 360 months
(thirty years).  (Plea Agreement ¶ 5.)

Sentencing Position noted:

> It became clear to counsel during the COVID crisis that Mr. Tatum was not adjusting well to the jail when he was unable to have visits with his family or attorney. The [facts] as outlined in paragraphs 16 to 21 [of the PSR] outline some of those difficulties and that is what led counsel to hire an expert to evaluate his mental health, as he had never allowed himself to be evaluated before. Both his mother and wife supported the evaluation, as the doctor was unable to visit with Mr. Tatum as he was in the disciplinary unit and due to the COVID protocol. What became evident with the forensic evaluator is that this isolation was exacerbating his untreated mental health condition. The doctor opined that it is well known that isolation or solitary confinement is harmful to individuals with mental health conditions. The use of solitary confinement in jails can increase problems with prisoner behavior rather than deterring those prisoners from future infractions. Judging from his last disciplinary infraction, Chris was trying to work his way out of isolation and just made a poor decision on the method how. What is important to note is that before the COVID crisis, and the separation of the support of his wife and attorney, Mr. Tatum was not exhibiting these kinds of behaviors.

(Def.'s Sentencing Position (ECF No. 56) at 8.)  Tatum's counsel also argued that "it is clear from the PSR that Mr. Tatum suffers from [bipolar] disorder and is in desperate need of treatment, medication and counseling. He needs to be thoroughly evaluated such that a regime of medications or behavior modification can help him rehabilitate and change his future." (Def.'s Sentencing Position at 11.)  Counsel supplemented Tatum's Sentencing Position with a Report authored by Licensed Clinical Psychologist Sara Boyd.[3]  (Boyd Report (ECF No. 57).)  In her Report, Boyd opined that Tatum likely suffers from bipolar disorder and cautioned that the use of solitary confinement can exacerbate symptoms of the disorder and "increase problems with prisoner misbehavior rather than deterring those individuals from future infractions." (Boyd Report at 7.)

---

[3]     The Court notes, as it did at the time of Tatum's sentencing, that Boyd did not speak to Tatum before completing her report, relying instead on interviews with Tatum's wife and adopted mother.

The Court held Tatum's sentencing hearing on June 23, 2020.  During the hearing, the Court acknowledged Tatum's undiagnosed mental health issues and noted the likely role that those issues played in both Tatum's crimes and his disciplinary infractions.  (Sentencing Transcript (ECF No. 65) at 19.) The Court also engaged in the following exchange with Tatum's counsel:

> DEFENSE COUNSEL:  To get to the heart of the matter, Your Honor, you're well familiar with the evidence.  You're well familiar with the motions to suppress.  You're well familiar, as you made in your remarks to the United States, that not only is a robbery a difficult thing to overcome, but to come into court and to face the person who did it and to sit right there and to have him right there.  Mr. Tatum, by pleading guilty, saved them that.  He saved them the idea that they had to come in and testify against somebody.  They probably wouldn't have been able to recognize him because of the mask that was worn.  So he did a lot to try to rectify the damage that he caused, he and Mr. Aikens caused.

> THE COURT:  I want to say this, and I've said this, you know, in the other sentencings I've done.  I personally believe acceptance of responsibility is the single most important aspect of sentencing for a lot of reasons.  I will tell you that had he not pled guilty, I would have given him a life sentence without any reservation.  I will tell you, I'm actually not feeling too good about the 30 years that the government is recommending, but I'm inclined to go along with that.  But I believe that had he not pled guilty, I would have easily given him a life sentence and would not have thought a second about it.

> DEFENSE COUNSEL:  And I recognize that, which is why, in talking to him, Your Honor, we came to this agreement.

> THE COURT:  Well, I know that.  I am actually—that was my point about the mandatory minimums to Mr. Anthony.  He may not realize this, but he's already received a sufficient—a significant benefit that you negotiated because of the 924(c)s.  That's what you were trying to escape, right?  You didn't want the floor to be 49 years, right?

> DEFENSE COUNSEL:  That is correct, Judge.

> THE COURT:  Right.  And then secondly, you were probably keen to the fact that I was highly likely to give him a life sentence, which is—I want the record to be clear.  Having reviewed everything now, that had he gone to trial, I would have given him a life sentence.

4

   DEFENSE COUNSEL:  I did not have a doubt when he pled and I don't have a doubt now, Judge.

   THE COURT:  Okay.  So—BUT I've looked at all your other points.  I do think—I can't stress that enough.  I say this in all the cases where defendants plead guilty.  To me, it's two different worlds on sentencing between a defendant who pled guilty—and he did—even though we did have briefing on the suppression motion, we never had the hearing on that.  And I look at timing as well.  And that, frankly, is the only reason why I'm probably going to go along with the plea agreement.  Had we litigated the suppression motion, we probably would have been talking in the 40s.

   DEFENSE COUNSEL:  Again, that was my advice, and that's why we seized upon the moment as we did, Judge.

(Sentencing Transcript at 13:2–15:7.)

After considering the parties' arguments and the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Tatum to 240 months of incarceration on Count Nine and 120 months of incarceration on Count Ten, to run consecutively.  (ECF No. 59.)  On June 30, 2020, the Court entered judgment against Tatum on the public court docket.  (ECF No. 63.)

Tatum did not appeal his conviction or sentence.  However, on April 19, 2021, Tatum moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 67.)  The Court denied that motion on January 31, 2022.  (ECF No. 96.)  Tatum then filed his Amended § 2255 Motion on March 9, 2022.  (ECF No. 100); *see supra* note 2.

In the § 2255 Motion, Tatum raises the following claims for relief:

Claim One: "Ineffective Assistance of Counsel in Negotiations – Failure to recognized (sic) diminished capacity to give free and voluntary consent." (§ 2255 Motion at 5.)

Claim Two: "Ineffective Assistance of Counsel in Plea Negotiations – Failure to apprise defendant sufficiently of likely penalty and likelihood of mental health mistreatment in custody."
(§ 2255 Motion at 6.)

On May 10, 2022, the Government filed its Response in Opposition.  (Response (ECF

No. 108).)  The Government argues that Tatum's motion is both untimely and procedurally

defaulted.  (Response at 9 n.2 and 10–11.)  The Government also argues that Tatum has

established neither deficient performance nor resulting prejudice.  (Response at 11–18.)

As discussed below, the Court finds that Tatum's motion is timely and that his claims are

not procedurally defaulted.  The Court further finds, however, that Tatum fails to assert or

establish that he would not have pleaded guilty but for his counsel's alleged errors.  Accordingly,

Tatum's claims fail for lack of prejudice, and his motion must be dismissed.

## II.    TIMELINESS

The Government first argues that Tatum's § 2255 Motion is untimely.  (Response at 9

n.2.)  The Court disagrees.

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA")

amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a

§ 2255 Motion.  Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)** A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>> **(1)** the date on which the judgment of conviction becomes final;
>> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Because Tatum did not appeal, for purposes of 28 U.S.C. § 2255(f)(1), his conviction

became final fourteen days after the Court's entry of judgment against him.  *See United States v.*

*Clayton,* 2010 WL 4735762, at *3 (E.D. Va. Nov. 15, 2010) (citing *Arnette v. United States,*

2005 WL 1026711, at *4 (E.D. Va. May 2, 2005)); Fed. R. App. P. 4(b)(1)(A) ("In a criminal

case, a defendant's notice of appeal must be filed in the district court within 14 days after . . . the

entry of either the judgment or the order being appealed.")  The Court sentenced Tatum on June

23, 2021.  (ECF No. 59.)  However, the Court's judgment was not filed on the public docket

until June 30, 2021.  (ECF No. 63); *see United States v. Osborne*, 452 F. App'x 294, 296 (4th

Cir. 2011) (concluding that petitioner's conviction became final fourteen days after the Court's

entry of judgment on the public docket).  Thus, Tatum's conviction became final on Tuesday,

July 14, 2020, and he had until Wednesday, July 14, 2021 to file any motion under 28 U.S.C.

§ 2255.

Tatum filed his § 2255 Motion on July 14, 2021.  (ECF No. 86.)  Accordingly, the Court

finds Tatum's § 2255 Motion as timely filed.

### III.   PROCEDURAL DEFAULT

The Government next argues that Tatum's claims are procedurally defaulted and must be

dismissed.  (Response at 10–11.)  The Government is mistaken.

In his § 2255 Motion, Tatum raises two freestanding claims of ineffective assistance

attacking his counsel's performance before and during Tatum's February 2020 guilty plea.

(§ 2255 Motion at 5, 6.)  In response, the government asserts that Tatum failed to raise either of

his claims on direct appeal rendering them procedurally defaulted.  (Response at 10 (citing

*United States v. Bowman*, 267 F. App'x 296, 299 (4th Cir. 2008).)

The law is "well settled that 'a claim of ineffective assistance should be raised in a 28

U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record

conclusively shows ineffective assistance.'"  *United States v. King*, 119 F.3d 290, 295 (4th Cir.

1997) (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992)).  Thus, Tatum's

ineffective assistance claims are properly before this Court.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Although the Court finds that Tatum has properly raised his ineffective assistance claims in a § 2255 Motion, review of the record reveals that Tatum cannot establish prejudice as required under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985).  Accordingly, the Court will dismiss his § 2255 Motion.

The Court's review of Tatum's ineffective assistance of counsel claims is governed by the familiar standard set forth in *Strickland v. Washington*.  Under *Strickland*, "[a] convicted defendant claiming ineffective assistance 'must show that counsel's representation fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hooper v. Garraghty*, 845 F.2d 471, 473–74 (4th Cir. 1988) (quoting *Strickland*, 466 U.S. at 687–88, 694).  When a defendant challenges the validity of his or her guilty plea based on ineffective assistance of counsel, the first prong of Strickland applies unaltered. *Hill*, 474 U.S. at 58.  However, the second, or "prejudice" prong of the analysis shifts such that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.  Thus, under *Hill*, a defendant must both explicitly allege and demonstrate that, but for counsel's errors, he would have rejected the Government's plea offer and gone to trial. *Id.* at 60 (finding that because "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial," Petitioner "failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test").

This second prong is dispositive of Tatum's motion.[4]  In his motion, Tatum argues, alternatively, that counsel failed to "recognize" Tatum's diminished capacity before his plea and failed to "apprise" Tatum of the likely penalty that he would receive.  (§ 2255 Motion at 5, 6.) Tatum further alleges that counsel failed to inform him of the likelihood that he would encounter "mental health mistreatment in custody."  (§ 2255 Motion at 5, 6.)  Setting aside the logical frailties of these arguments,[5]  the Court finds that Tatum wholly fails to allege that but for counsel's conduct, he would have insisted on going to trial.  Indeed, in reply to the Government's well-supported assertion that Tatum would have been convicted and sentenced to life had he gone to trial,[6] Tatum argues as follows:

> [T]he Government fails to consider a more realistic scenario:  had former counsel recognized Mr. Tatum's demised capacity prior to the guilty plea, Mr. Tatum could have received more sufficient evaluation; the Court could have been notified about his mental issues at an earlier stage of this case as to provide him with more appropriate procedural safeguards to ensure his due process rights; and, the outcome of the sentence could have been more lenient to Mr. Tatum in light of an evaluation report which more sufficiently apprises his mental issues.

(Reply (ECF No. 113) at 6); *cf. Fields v. Attorney General State of Md.*, 945 F.2d 1290, 1297 (4th Cir. 1992) (finding that Defendant's assertion that "with effective assistance he would have pled to a different plea bargain and received a more favorable sentence" did not establish

---

[4]     "If the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields v. Attorney General State of Md.*, 945 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland,* 466 U.S. at 697).

[5]     The Court notes that Tatum fails to point to any evidence in the record indicating that Tatum's counsel knew or had reason to know of Tatum's undiagnosed mental health problems before or during Tatum's February 2020 plea.  To the contrary, the uncontroverted evidence establishes that counsel was not aware of such issues, because Tatum affirmatively denied having mental health issues and was not exhibiting tell-tale behaviors until after COVID-19 reduction measures isolated Tatum from his family and support system in March 2020.  (PSR at 19; Def.'s Sentencing Position at 8.)

[6]     The Court repeatedly advised Tatum's counsel as such during his sentencing hearing. (Sentencing Transcript at 11–13.)

9

prejudice under *Strickland* and *Hooper*). To prevail, Tatum "must establish a reasonable probability that if his lawyer[] had obtained a ["more sufficient evaluation"], he would have rejected the plea agreement." *Hooper*, 845 F.2d at 475. This he simply does not do. Accordingly, his motion fails as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Tatum's § 2255 Motion will be denied. (ECF No. 100.) The action will be dismissed. A certificate of appealability will be denied.

An appropriate Final Order shall accompany the Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 3, 2023

10